## THE L. & W. B. C. CO. NO. 8.

## THE NEW YORK CENTRAL NO. 18.

## THE NEW YORK CENTRAL NO. 67.

## THE NOTTINGHAM.

### Nos. 17062, 17122.

District Court, E. D. New York.

June 16, 1945.

Mahar & Mason, of New York City (Frank Mason, of New York City, of counsel), for Cullen Transp. Co.

C. Austin White, of New York City (Gerald E. Dwyer, of New York City, of counsel), for the New York Central.

GALSTON, District Judge.

These cross-suits involve a collision that took place on the night of November 2, 1943 in the North River, in the vicinity of Pier No. 40.

The steamtug Nottingham had the barge L. & W. B. C. Co. No. 8 on her port side, bow first, bound from Red Hook Flats to Weehawken, New Jersey. The steamtug New York Central No. 18 had its tow, carfloat New York Central No. 67, on her starboard side, bound from Weehawken, New Jersey, to Long Island City.

Captain Broderick, who was master of the Nottingham, in giving his version of the collision, said that on entering the North River he was proceeding about 250 yards off the New York side. When he sighted the New York Central tug and tow he saw only her red light and the two towing lights. A distance of one-eighth of a mile separated the two tows. Broderick blew one whistle. He then said that the Central changed her course and showed both running lights, and that he had an answer of two whistles to his one whistle signal. Broderick answered with three long blasts and one full speed astern. At that time, according to the Nottingham version, the Central tow swung more to port, i.e. towards the New York shore. The boats came together, the contact being between the stem of the barge No. 8, striking amidships of the carfloat.

The version given by Captain Langley of the New York Central No. 18 differs in important respects. He testified that each of the tugs was showing its green light to the other, not their red lights, and that if both vessels had kept their courses they could have passed starboard to starboard with a clearance of about 300 feet; but as the vessels approached each other, and when about 700 feet apart, the Nottingham, according to him, veered toward New York and blew a one whistle signal, which the Central answered with an alarm signal and three backing whistles, going astern at the same time. In backing, the New York Central swung to port, towards the New York shore, and the collision then took place.

Thus the not unusual situation is presented of irreconcilable versions of the happening of the collision. To resolve the resulting doubt recourse must be had to the surrounding circumstances.

There was the testimony of one disinterested witness offered by the New York Central. Captain Freer had the Erie tug, Scranton, in charge while towing a carfloat from Pier 48, North River, to the Erie bridges, Jersey City. They were opposite New York Pier 29. He took a course down the middle of the North River, and having come abreast of the Erie bridges, came around so as to be half way between the middle of the river and the Jersey piers. While lying there, he observed the Nottingham coming up the river somewhat favoring the Jersey shore. The Nottingham passed about 200 or 300 feet off the stern of his tug, heading up the river; and he also saw the New York Cen-

tral tug coming down the river, somewhat favoring the New York side. Confirming the Nottingham captain, he said he heard the Nottingham blow a one whistle signal, and at that time the respective boats were on courses which if continued would have enabled them to pass starboard to starboard, as testified to by the Central captain. The vessels were then about 800 feet apart. After the Nottingham blew a one whistle signal she changed her course to port, heading toward New York. Again confirming the New York Central captain, he said that the Central did not blow two whistles, but responded to the Nottingham one whistle signal with an alarm and three backing whistles.

Generally speaking, the testimony of a disinterested competent witness, who apparently is testifying honestly, should resolve the doubt, and I would unhesitatingly accept Freer's version were it not for one important contradiction between his testimony and that of Langley, whom he was endeavoring to support. This contradiction relates to the place of collision, which is of consequence in determining credibility. Freer said that the collision took place around Pier 34, North River, very close to where he was lying. On the other hand, Langley himself said the collision took place opposite Pier 40, "above 32." Though the visibility was fairly good, there was a light drizzle at the time of collision, and Pier 29, where the Scranton was lying, is a considerable distance south of Pier 40. Of course, Freer may just have guessed, but nevertheless the inaccuracy of a guess and his placing the collision only a short distance from Pier 29, must lead to questioning the accuracy of his entire testimony. Moreover, if as he testified the vessels were in position to pass starboard to starboard with 200 or 300 feet separating them, it is hard to understand why the Nottingham should have blown one whistle, calling for a port to port passage. There was no circumstance described which would explain why the Nottingham suddenly veered to the right. The Nottingham was proceeding against the tide, and the Central tug, with a heavily laden float, had the tide underfoot.

On the whole, I think that the version given by the Nottingham's witness, despite the apparent disinterestedness of the Erie captain, presents that of greater probability.

Accordingly the Cullen Transportation Co. is entitled to a decree against the steamtug New York Central No. 18, and the cross-libel will be dismissed.

Concurrently with this opinion, appropriate findings of fact and conclusions of law will be filed.